**Nada RAAD, Plaintiff–Appellant,**

v.

**FAIRBANKS NORTH STAR BOR-
OUGH SCHOOL DISTRICT,
Defendant–Appellee.**

**No. 00–35999.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 2002.

Filed March 27, 2003.

As Amended May 8, 2003.

---

1186

Robert A. Sparks, Law Office of Robert A. Sparks, Fairbanks, AK, for the plaintiff-appellant.

Peter C. Partnow, Foster, Pepper, Rubini & Reeves LLC, Anchorage, AK, for the defendant-appellee.

Before: B. FLETCHER, ALARCÓN, and GRABER, Circuit Judges.

BETTY B. FLETCHER, Circuit Judge.

Plaintiff–Appellant Nada Raad, an American citizen of Lebanese descent and Muslim faith, appeals the district court's order of summary judgment against her claims of workplace discrimination on the basis of national origin and religion, and her claims of retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Raad's allegations of discrimination stem from her employment as a substitute teacher by the Fairbanks North Star Borough School District (the "District"). Raad alleges that the District subjected her to disparate treatment because of her national origin when it refused to hire her as a permanent teacher during three consecutive hiring cycles, beginning in 1991. After her third rejection in August 1993, Raad made a statement that District administrative staff construed as a bomb threat and reported to the police. Raad denies having made such a threat, and instead alleges that the report to the police was fraudulently made because Raad is a Muslim of Lebanese descent. As a result of the perceived bomb threat, Raad was suspended from teaching within the District for one year. Raad also claims that the initial rejection of her application for permanent employment in 1993, as well as her discipline for allegedly making a bomb threat, constituted acts of retaliation for protected activity.

The district court granted summary judgment in favor of the District on all of Raad's claims. Because we conclude that the district court failed to consider the

evidence in the record in the light most favorable to Raad, the nonmoving party, and because, when viewed in that light, the record reflects a genuine dispute of material fact, we reverse the district court's decision as to all of Raad's claims on appeal except one, and remand this case for further proceedings.[1]

## I. FACTS AND PROCEDURAL HISTORY [2]

Born and raised in Beirut, Lebanon, Nada Raad obtained undergraduate and graduate degrees from the University of Illinois Urbana–Champaign. After returning to Beirut, Raad accepted a position with the American University of Beirut, preparing lectures and exhibits in connection with its natural history museum. Raad immigrated to Alaska in 1989, when her husband accepted a teaching position with the University of Alaska, Fairbanks ("UAF"), and obtained her certification to teach in Alaska public schools through the UAF teaching program. She maintained excellent academic records in both her graduate study and her teaching preparation at UAF, and graduated from the UAF program with outstanding faculty recommendations.

Raad made her first application for full-time teaching status in the District in January 1991. She received a "preliminary personal interview" on March 6, 1991, with area high school principal Andre Layral and was awarded the highest possible rating by the team of principals who interviewed her (i.e., 3 out of 3 points). Nonetheless, in his evaluation of Raad's interview, Layral noted her accent as a potential weakness in her candidacy, observing that Raad's "accent and soft spokenness may be a detractor to some instructional effectiveness. This could be addressed if hired." Layral's statement, which remained in Raad's personnel file throughout her employment with the District, marks the first in a series of statements over the next two years made by District officials referring to Raad's accent as an obstacle to her full-time employment as a teacher in math and science. However, there is no evidence in the summary judgment record that Raad's accent ever interfered with her performance while she served either as a substitute teacher or as a temporary full-time teacher in 1992–93. To the contrary, Raad's recommenders, both within the District and at UAF, consistently complimented her classroom performance, including her success at establishing "an excellent rapport with her students."

During the 1991–92 school year, Raad received numerous requests from full-time District teachers that she serve as a substitute teacher in their classes when they were absent. Raad requested and received from former Tanana Middle School principal Deborah Kerr–Carpenter an unqualified recommendation that she be retained in a full-time position. However, in July 1992, District staff told Raad that she had not been placed in the hiring pool for the 1992–93 school year because Kerr–Carpenter's recommendation had not been submitted on the proper form. Raad obtained Kerr–Carpenter's recommendation on the proper administrative form on July 21, 1992, but was not informed that she had been placed in the hiring pool until the end of August. Meanwhile, in an interview report dated August 18, 1992, Kerr–Carpenter noted as a weakness Raad's "[a]rticulation of English—needs to talk slower/enunciate words better." Kerr–Carpenter reiterated this rationale in her

---

1. Raad has not appealed the district court's grant of summary judgment on her claims of sex discrimination, race discrimination, disparate impact, or alleged improper destruction of documents. Accordingly, our decision on appeal does not address these claims.

2. As required on appeal of summary judgment, we view all facts in the record in the light most favorable to Raad, the nonmoving party. Many of these facts are, in fact, disputed.

deposition testimony, where she admitted that she did not hire Raad for a full-time position in 1992 because of "her articulation and enunciation of words."

Between the time when Raad resubmitted Kerr–Carpenter's recommendation and the time when the District informed her that she was under consideration for a 1992–93 position, the District filled four full-time teaching positions in math and science. During August 1992, Raad learned that a specific biology position had become open at Tanana Middle School. Raad requested to be considered for that position. Although Raad produced evidence that she was highly qualified, she was not hired to fill the position.

As a result of her inability to secure a permanent position, Raad met with District EEO officer Charles Moore on September 23, 1992. Raad filed a complaint of unlawful discrimination based on national origin and religion. Two days later, during a follow-up meeting, Moore informed Raad that her credentials were outstanding and that the reason why she had not been hired for the Tanana position was that Tanana needed someone with credentials to double as a ski coach. Because Raad frequently substituted at Tanana, Raad knew that Tanana already had two ski coaches; she therefore suspected that this justification was false. Moore assured Raad that he would advise Jerry Hartsock, principal at Lathrop High School, to offer her a full-time position there beginning in the 1993–94 school year.

In March 1993, Moore discouraged Raad from accepting a long-term substitute position at Lathrop because she was going to be hired for a full-time, temporary position at Ryan Middle School, replacing a teacher who was leaving mid-year. Raad accepted and completed this temporary assignment.

In August 1993, Raad was interviewed for the full-time science position at Lathrop.[3] Despite Moore's initial assurance that she would receive the position, Raad was later informed by Hartsock that she had been rejected. When confronted, Moore denied that he had made any commitment to Raad that she would receive this job. He then informed Raad that the District declined to hire her because of her accent.

Also in early August 1993, Raad learned that Kerr–Carpenter had hired Pat Cromer to fill a health teaching position at Tanana, without any competitive interview, in September 1992. Cromer and Raad had both applied for the Tanana 1992 science position, and Raad surmised that Cromer had been hired for the health position following Raad's discrimination complaint to Moore. This chronology was corroborated by Kerr–Carpenter herself. Moore testified in his deposition that he knew of no set of circumstances in which a principal would be empowered to offer a position of this kind without engaging in competitive interviews.

On August 13, 1993, after hearing that she had been rejected for the Lathrop position, Raad insisted on speaking with Superintendent Cross. She went to his office in the District administration building, but was not permitted to meet with him. Raad said that she needed to speak with Cross about "a matter of life or death," but was told that Cross simply would not meet with an unsuccessful job applicant. Raad then made two statements in front of Cross's administrative staff, Pam Hallberg and Lynda Sather, that have become central to this litigation. First, Raad alleges that, in a state of extreme frustration, she said that she was very angry and did not want to "blow up."

---

3. On August 3, 1993, Raad had a meeting with Moore in which he asked her if she ever wore a veil. This meeting appears to have taken place prior to her interview with Hartsock.

Hallberg and Sather apparently interpreted this as a threat to "blow up the building" if Raad were not allowed to speak with Cross. Raad, who had made arrangements to see her attorney later that day, then went to Moore's office to speak with him about the matter. The record on summary judgment reflects that Raad was not yelling or in any way acting out of control either at this time or during her initial encounter with Cross's staff. Raad made a statement to Moore to the effect that she did not want to see anyone "get hurt," by which she meant—and Moore understood—*legally* hurt by the filing of a civil complaint. She allegedly made this statement, while sitting with her arms folded and crying, after Moore informed her that the police had been called.

Hallberg and Sather denied knowing that Raad was Lebanese, but the police log report documenting the request for assistance at the administration building due to a bomb threat identified the suspect as a "Lebanese woman." In addition, Raad's ethnicity was known to the District through its personnel file, which contained her transcripts, in which Raad is listed as Lebanese.[4] Police escorted Raad from the building, but the Fairbanks District Attorney declined to press charges against her. Hallberg and Sather were interviewed following the incident by a Fairbanks police officer. The officer alluded to Raad's accent and then asked Hallberg whether she might have misunderstood the reputed bomb threat. Hallberg replied that she was not mistaken, although she could not recall Raad's exact words. However, she also noted that Raad did not say or do anything else that was threatening, only that her "body language" (i.e., leaning over

the counter to talk to Hallberg) was threatening.

Raad submitted her intake questionnaire to the Alaska State Commission for Human Rights ("ASCHR") on or about August 31, 1993. On September 8, 1993, Raad was informed by letter from Personnel Director Anita Gallentine that the District would not offer her a full-time position or hire her as a substitute during the 1993–94 school year. Gallentine had also issued a memorandum to all building administrators in the District, ordering that Raad was not to be hired by any school for an indefinite period of time. In a subsequent disciplinary hearing on September 29, 1993, Raad was not permitted to introduce evidence of discrimination against her, and the hearing concluded by affirming Gallentine's decision.

On September 16, 1993, Raad filed a formal charge with the ASCHR, alleging discrimination on the basis of her national origin and religion, and in retaliation for opposing such discrimination, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and state anti-discrimination law, Alaska Stat. § 18.80.220. Raad filed her civil complaint in district court on October 14, 1997. Following several motions and extensive discovery, the District moved for summary judgment on February 9, 2000. The district court granted the District's motion on July 14, 2000. Raad filed a Rule 59 motion for reconsideration on July 24, 2000, which the district court construed as a motion alleging clear error in its ruling of July 14. The court denied that motion on October 10, 2000, and Raad filed this appeal.

4. Of course, by this time, Raad was relatively well known in the District due to her years of service as a substitute teacher, her numerous applications for full-time employment, her meetings with EEO officer Moore, and his several conversations with school principals and the superintendent in which her employment status was the prime topic of conversation.

## II. ANALYSIS

### A. *Disparate Treatment Claims: National Origin and Religion*

#### 1. *1991–92 failure-to-hire claims: continuing violation*

Since the district court issued its decision in this case, the Supreme Court has overruled the "continuing violation" theory of Title VII liability as it was applied by the district court following prior Ninth Circuit authority. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), *overruling Morgan v. Nat'l R.R. Passenger Corp.,* 232 F.3d 1008 (9th Cir.2000). In reviewing whether the district court properly granted summary judgment against Raad's claims based on the District's refusal to hire her for a full-time position in 1991 and 1992, we are bound to apply current Supreme Court law.

■ In *Morgan,* the Court drew a distinction between harassment-based and non-harassment-based claims under Title VII: plaintiffs may not establish employer liability for events occurring prior to the statutory limitations period[5] in non-harassment based claims, even if events occurring outside of the limitations period form part of a pattern extending to events that are not time-barred. *Morgan,* 122 S.Ct. at 2072 (stating that "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges"); *see also id.* at 2071("We have repeatedly interpreted the term 'practice' to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts."). In other words, a discriminatory practice, although it may extend over time and through a series of related acts, remains divisible into a set of discrete acts, legal action on the basis of which must be brought within the statutory limitations period.

■ Here, Raad filed her EEO charge with the ASCHR on September 16, 1993. Because she filed her charge with the state agency, the 300–day limitations period governs her claim. Therefore, the District may be held liable only for discriminatory acts perpetrated within 300 days of September 16, 1993, counting backward from that date. As a result, Raad's claims based on the District's denial of her full-time application in August 1993 for the science position at Lathrop, as well as her claims based on the report of a bomb threat and ensuing disciplinary action, are not time-barred. The District may be held liable for damages caused by these acts, assuming that Raad is able to prove her case.

■ The failure-to-hire claims arising out of Raad's applications in 1991 and 1992 are time-barred; however, their supporting factual allegations may remain relevant to Raad's live claims. *See Morgan,* 122 S.Ct. at 2072; *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). Accordingly, while these claims are not independently actionable, evidence about the District's refusal to hire Raad for a full-time teaching position in 1991 and 1992 is relevant and admissible insofar as it bears on her claim that she was discriminatorily refused a full-time position in August 1993.

#### 2. *1993 failure-to-hire claim*

■ In granting summary judgment to the District on Raad's claims of unlawful hiring discrimination on the basis of

---

**5.** A plaintiff must file a charge within 180 days after the unlawful employment practice occurred if filing directly with the EEOC, or within 300 days if filing with a state agency possessing the authority to process and remedy such claims under state law. 42 U.S.C. § 2000e–5(e).

national origin and religion, the district court reasoned that Raad had "failed to come forward with any direct evidence of discriminatory animus nor has she come forward with specific and substantial circumstantial evidence that establishes that defendant's articulated reason for not hiring her was false or that the real reason was discrimination." *Raad v. Fairbanks N. Star Borough Sch. Dist.,* No. F97–0068–CV, slip op. at 43 (D.Alaska July 17, 2000). In so holding, the district court erroneously drew inferences in favor of the defendant's position that its decisions to deny Raad full-time employment were based solely on her qualifications. For example, the court observed:

> It is the court's experience with employment cases where discrimination has been found that the defendants invariably give away their motives and intent by disparaging remarks in speech or writing or by contrived reasons for the employer's conduct. They are dismissive or disparaging of the prospective employee's national origin, religion, or whatever the employer's special bias happens to be. Not so here .... There is no evidence of the usual snide, sarcastic, or demeaning comments.

*Raad,* slip op. at 26 n. 20. However, it is well-settled law in this Circuit, as elsewhere, that "[a] *prima facie* case of unlawful employment discrimination on the basis of protected characteristics may be established through indirect evidence under the familiar *McDonnell Douglas* four-part test." *Lam v. Univ. of Haw.,* 40 F.3d 1551, 1559 (9th Cir.1994).[6]

As to its assessment of Raad's proffered "circumstantial" evidence, the district court found that Raad had failed to meet the requirement that such evidence be "specific" and "substantial" in order to create a triable issue of fact. *Raad,* slip op. at 27(citing *Godwin v. Hunt Wesson, Inc.,* 150 F.3d 1217, 1222 (9th Cir.1998)). The District conceded at summary judgment that Raad had met her initial burden of establishing a *prima facie* case of discrimination on the basis of national origin and religion. With this concession, the burden of production shifted to the District "to articulate a nondiscriminatory reason for each adverse employment action." *Chuang v. Univ. of Cal. Davis,* 225 F.3d 1115, 1126(9th Cir.2000); *accord St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 506–07, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). " '[T]he defendant must clearly set forth, through the introduction of admissible evidence,' reasons for its actions which, *if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr.,* 509 U.S. at 507, 113 S.Ct. 2742(quoting *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254–55, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (alteration and emphasis in the original).

To the charge of hiring discrimination with regard to the Lathrop full-time position in August 1993, the District responds that Raad was legitimately denied that position on the basis of her qualifications, including her language and communications skills, in addition to her temperament. At this stage, the burden-shifting scheme of *McDonnell Douglas* requires that Raad raise a genuine factual question

---

**6.** The Supreme Court held in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), that a plaintiff can make out a *prima facie* case of discrimination by showing that (1) she belongs to a protected class; (2) she applied for and was qualified for a job for which the employer was seeking applicants; (3) despite being qualified, she was rejected; and (4) after her rejection, the position remained open and the employer continued to seek applicants from people of comparable qualifications. *Accord Lam,* 40 F.3d at 1559.

whether, viewing the evidence in the light most favorable to her, the District's proffered reasons are pretextual. *See Chuang,* 225 F.3d at 1126. This "shift" does not necessarily place a new burden of *production* on Raad. In *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), the Court held that the factfinder may infer "the ultimate fact of intentional discrimination" without additional proof once the plaintiff has made out her *prima facie* case if the factfinder rejects the employer's proffered nondiscriminatory reasons as unbelievable. *Accord Chuang,* 225 F.3d at 1127("[A] disparate treatment plaintiff can survive summary judgment without producing any evidence of discrimination beyond that constituting his prima facie case, if that evidence raises a genuine issue of material fact regarding the truth of the employer's proffered reasons.").

■ Our inquiry is twofold: The plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." *Id.* (citing *Godwin,* 150 F.3d at 1220–22). All of the evidence—whether direct or indirect—is to be considered cumulatively. *Id.*

Here, the district court, like the Fifth Circuit in *Reeves,* misapplied the standard of review, failed to draw all reasonable inferences in favor of Raad, the nonmoving party, and impermissibly substituted its judgment concerning the weight of the evidence for the jury's. For example, the district court stated that "[t]he fact that both Kerr–Carpenter and Layral mentioned plaintiff's accent is not evidence of impermissible bias, particularly in light of the other favorable comments that both individuals made about plaintiff." At the summary judgment stage, however, when

one draws all permissible inferences in favor of the nonmoving party, this is precisely the wrong approach.

■ Raad's claim of hiring discrimination in August 1993 stands primarily upon the following evidence: that she was substantially more qualified than the applicant who received the position, Rise Roy; that she had initially been told that the position would be a transfer (as a result of her temporary full-time position in 1992–93) for which she would not have to interview or compete; and that EEO officer Moore later informed her that she had not received the job because of her accent. In this Circuit, we have held that a finding "that a Title VII plaintiff's qualifications were clearly superior to the qualifications of the applicant selected is a proper basis for a finding of discrimination." *Odima v. Westin Tucson Hotel,* 53 F.3d 1484, 1492 (9th Cir.1995). In *Odima,* we held that the plaintiff's superior qualifications *standing alone* were enough to prove pretext and, on that basis, we affirmed the district court's entry of judgment for the plaintiff following a bench trial. *Id.* Unlike the Tenth Circuit, *see Bullington v. United Air Lines, Inc.,* 186 F.3d 1301, 1319 (10th Cir.1999), we have *never* followed the Fifth Circuit in holding that the disparity in candidates' qualifications "must be so apparent as to jump off the page and slap us in the face to support a finding of pretext." *Raad,* slip op. at 43 (citing *Odom v. Frank,* 3 F.3d 839, 847 (5th Cir.1993)). This is especially true at the summary judgment stage, when we are compelled by the standard of review to infer from the pronounced difference between Raad's and Roy's qualifications that Raad has demonstrated a genuine factual dispute as to whether the District's proffered reasons were pretextual.

When considering the evidence as a whole, there are numerous other bases

upon which a trier of fact could infer pretext. For example, Moore informed Raad that she had been denied the Lathrop position due to her accent. On this record, his statement should be viewed against the backdrop of Kerr–Carpenter's 1992 statements regarding Raad's accent, and Layral's statement regarding Raad's accent in his preliminary interview evaluation, which remained in her file with the District.

The close relationship between language and national origin led the EEOC to classify discrimination based on "linguistic characteristics" as unlawful under Title VII. *See* 29 C.F.R. § 1606.1 (2003); *cf. id.* § 1606.7(a)(noting, in the context of speak-English-only rules, that "[t]he primary language of an individual is often an essential national origin characteristic"). "Accent and national origin are obviously inextricably intertwined in many cases." *Fragante v. City & County of Honolulu,* 888 F.2d 591, 596 (9th Cir.1989). To be sure, we have held that adverse employment decisions may be predicated upon an individual's accent, but only if it interferes with the individual's job performance. *Id.* at 596–97; *see also Carino v. Univ. of Okla. Bd. of Regents,* 750 F.2d 815, 819 (10th Cir. 1984) ("A foreign accent that does not interfere with a Title VII claimant's ability to perform duties of the position he has been denied is not a legitimate justification for adverse employment decisions."). Here, the summary judgment record contains evidence that Raad's accent did not impair her performance as a teacher (and therefore was not job-related), including recommendations written by her graduate school instructors, requests for her as a substitute by other teachers employed by the District, and the District's own continued employment of her as a substitute. Based on this evidence, it would be reasonable for a finder of fact to infer that the District used her accent as a pretext to deny her a full-time position because of her national origin.

 In addition to the accent and qualifications evidence, under *Morgan* we also look to the District's past treatment of Raad's candidacy for full-time positions as background evidence of intent to discriminate. Specifically, Raad alleges that the District undervalued her G.P.A. and writing sample in 1991 in order to exclude her from the hiring pool for full-time positions and delayed her admission into the hiring pool in 1992 in order to dispense the majority of positions prior to her becoming eligible. Raad also alleges that Kerr–Carpenter manufactured false flow charts to indicate that she had conducted competitive interviews for positions that she had given to other applicants without conducting such interviews in the 1992–93 school year. The circumstances surrounding each of these questions involve factual disputes that should not have been resolved at summary judgment by the district court's weighing of the evidence.

### 3. *Disciplinary suspension: the alleged bomb threat*

The district court also granted summary judgment to the District on Raad's claim that, due to her alleged bomb threat, she was discriminatorily subjected to a disciplinary suspension in her eligibility to be hired either as a substitute or as a full-time teacher. The district court inappropriately concluded, again weighing the evidence, that "defendant's personnel legitimately believed that plaintiff had threatened to blow up the building."

 In applying the *McDonnell Douglas* test to the facts of this claim, Raad may establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class, (2) she was adequately performing her job (prior to the alleged bomb threat), and (3) she suffered an adverse employment action or was treated differently from others who

were similarly situated. *See* 411 U.S. at 802, 93 S.Ct. 1817; *see also Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1113 (9th Cir. 2000). "The requisite degree of proof necessary to establish a *prima facie* case for Title VII ... claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994). "The plaintiff need only offer evidence which gives rise to an inference of unlawful discrimination." *Id.* (internal quotation marks and citation omitted).

Raad made out a prima facie case of discrimination with respect to the District's reaction to the alleged bomb threat. She showed that: (1) she is a member of a protected group, (2) she was performing her job adequately before the alleged bomb threat, and (3) she suffered an adverse employment action when the District issued its disciplinary suspension. Therefore, the burden of production shifted to the District to articulate a legitimate, nondiscriminatory reason for its actions. *Chuang*, 225 F.3d at 1126.

The District asserts that it disciplined Raad because she made a bomb threat, and claims that it would have sanctioned similarly any other employee who made such a threat. Raad maintains that she did not make a bomb threat, but that fact is irrelevant at the *second* step of the *McDonnell Douglas* analysis, which focuses on the employer. To satisfy its burden, the District "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Burdine*, 450 U.S. at 257, 101 S.Ct. 1089. Here, the District presented sufficient evidence of a bomb threat to shift the burden back to Raad to show that the District's proffered reason is pretextual. *Chuang*, 225 F.3d at 1126.

Raad may prove pretext "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. As discussed above, Raad presented evidence tending to show that the District's bomb-threat explanation is unworthy of credence. She offered proof that she did not threaten to blow up the building but, instead, stated only that she was very angry and did not want to "blow up." Further, Raad presented evidence that the staff members may have misunderstood what she said because of their preconceptions regarding her religion and national origin.

Although the District presented evidence in support of its claim that Raad did, in fact, make a bomb threat, Raad presented evidence from which a rational jury could conclude that she made no bomb threat at all and that the District's contrary interpretation of the event was influenced by stereotypes about her religion or nationality. Thus, there is a genuine issue of fact as to whether the District's stated reason for disciplining Raad was pretextual, and the district court erred in granting summary judgment.

### B. *Retaliation Claims*

Raad asserts claims of retaliation on two grounds: first, that the District's decision to deny her a full-time position, even though four such open positions were filled in August–September 1993, occurred in retaliation for her complaints to EEO counselor Moore; and, second, that her suspension in September 1993 was made in reprisal for her complaints to Moore and her filling-out of an intake questionnaire with the ASCHR.

To make out a *prima facie* case of retaliation under Title VII, Raad

must put forth evidence sufficient to show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal link between her activity and the employment decision. *See Hashimoto v. Dalton,* 118 F.3d 671, 679 (9th Cir.1997). Protected activity includes the filing of a charge or a complaint, or providing testimony regarding an employer's alleged unlawful practices, as well as engaging in other activity intended to "oppose[ ]" an employer's discriminatory practices. 42 U.S.C. § 2000e–3(a). "That an employer's actions were caused by an employee's engagement in protected activities may be inferred from 'proximity in time between the protected action and the allegedly retaliatory employment decision.'" *Ray v. Henderson,* 217 F.3d 1234, 1244 (9th Cir.2000) (quoting *Yartzoff v. Thomas,* 809 F.2d 1371, 1371 (9th Cir.1987)). In addition, the plaintiff must make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity. *See Cohen v. Fred Meyer, Inc.,* 686 F.2d 793, 796 (9th Cir.1982).

 As with her national origin and religious discrimination claims, Raad can show that a genuine dispute of fact exists as to whether the District's proffered justification (i.e., that it suspended her because of her actions on August 13) was a pretext for discrimination if she can demonstrate that the incident did not unfold as the District's witnesses allege and that the District knew or had reason to know of the falsity of those allegations. The district court's observation that nothing in the suspension memorandum indicated that Raad's suspension was predicated upon her discrimination complaints is not dispositive. Based on the evidence described above regarding the weakness and inconsistency of Hallberg's recounting of the incident, Raad has demonstrated that a factual dispute exists as to whether any

bomb threat was actually made and whether the District knew or should have known that the accusation was false.

Raad's second retaliation claim is more tenuous than her first. It is based upon four hiring decisions made in August–September 1993, all of which were made after the August 13 incident. The decisions were made by two principals at two different high schools: Layral and Thibodeau at West Valley and North Pole High Schools.

 In order to prevail, Raad must present evidence from which a reasonable trier of fact could conclude that the school principals who refused to hire her were aware that she had engaged in protected activity. *Cohen,* 686 F.2d at 796. Raad argues that her complaints regarding Kerr–Carpenter's 1992 hiring decisions were known to Moore and Gallentine, as well as to most principals, who were typically informed when discrimination complaints were made. However, Raad fails to point to any evidence in the record supporting her assertion that Layral and Thibodeau, the particular principals who made the allegedly retaliatory hiring decisions, in fact *were* aware of her complaints. Without any such evidence, there is no genuine issue of material fact.

Further, Raad's claim cannot be saved merely by the fact that she was more qualified than the applicants who were hired. We have held that such evidence may be probative of pretext in disparate treatment cases. *Odima,* 53 F.3d at 1492. However, there is no logical reason to extend that principle to this retaliation claim.

In a disparate treatment action, the fact that an employer hired a far less qualified person than the plaintiff naturally gives rise to an inference that the non-discriminatory explanation offered by the employer is pretextual; it is logical to expect that an employer wants to hire the most qualified person for the position. However, such a conclusion does not follow in the

particular circumstances of this case. The fact that Layral and Thibodeau hired less qualified applicants does not give rise to an inference that they were aware of Raad's protected complaints. If anything, it gives rise only to an inference that the two principals knew about the alleged bomb threat. Imputing knowledge of Raad's protected activity to the principals in this context would be just as inappropriate as imputing knowledge of the race of an applicant in a disparate treatment case when there is no evidence that the employer knew the applicant's race.

Accordingly, the district court properly granted summary judgment against Raad with respect to her second retaliation claim.

### III. CONCLUSION

For the foregoing reasons, the decision of the district court awarding summary judgment to the District on Raad's disparate treatment claims based on national origin and religion, and on Raad's claims of retaliation relating to her disciplinary suspension after the alleged bomb threat, is reversed. The district court's grant of summary judgment to the District on Raad's retaliation claim based on her complaints to the EEO counselor is affirmed. The case is remanded for further proceedings consistent with this opinion.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.