Filed 9/26/19

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| RASHMI GUPTA,<br><br>　　　Plaintiff and Respondent,<br><br>v.<br><br>TRUSTEES OF THE CALIFORNIA<br>STATE UNIVERSITY,<br><br>　　　Defendant and Appellant. | A151763<br><br>(City & County of San Francisco<br>Super. Ct. No. CGC-15-544050) |

The Trustees of the California State University for San Francisco State University (SFSU) appeals from a judgment entered after a jury found SFSU retaliated against its professor, Dr. Rashmi Gupta[1], in denying her tenure and terminating her employment. SFSU contends the trial court erred in: (1) allowing Gupta to present evidence of a "comparator professor" without requiring her to show her qualifications were "clearly superior" to that professor's qualifications; (2) refusing to give a special jury instruction regarding comparator evidence; and (3) "interven[ing] in the questioning of witnesses before the jury in a manner that favored [Gupta]." We reject SFSU's contentions and affirm the judgment.[2]

---

[1]For ease of reference, and with no disrespect intended, we will initially refer to the parties and witnesses by their professional titles and full names and thereafter by their last names only.

[2]We also affirm the court's post-judgment attorney fees order from which SFSU has filed a notice of appeal. SFSU has not raised any arguments challenging that order.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Gupta is an American woman of Indian national origin and ancestry. In 2006, SFSU hired her as a "tenure track assistant professor" in the School of Social Work, College of Health and Social Sciences. Each year, SFSU conducts a review and decides whether to retain the professor for another year. Typically, an assistant professor is hired to a six-year term and, during the sixth year, SFSU determines whether to promote the professor to associate professor and award lifetime tenure.

In her first three semesters at SFSU, Gupta had some difficulty adjusting to her new job and received Student Evaluation of Teaching Effectiveness (SETE) scores that were lower than the department mean. Her second year review explained: "Dr. Gupta's lower SETE scores may be attributed, in part, to the standards and expectations she sets for students. She gives students substantial assignments and demands results . . . One must commend her for holding firmly to the principles and standards she establishes for all courses, even if students complain about the rigors she presents." The review praised Gupta for being "a valued contributing member of the social work faculty," for being "actively engaged in research, scholarship, and publication," and for "jump[ing] in" "[d]espite being a new faculty member" and "actively contribut[ing] to the campus and community." Gupta made some adjustments to her teaching style, and in her third-year review, she received positive reviews from all three faculty members who conducted teaching performance evaluations. Her SETE scores began to improve and, each year, SFSU decided to retain her as an assistant professor.

On November 9, 2009, Gupta and several other women of color in the School of Social Work wrote a letter to SFSU Provost Dr. Sue Rosser to request a meeting with Rosser and the Dean of Faculty Affairs, Dr. Wanda Lee, to discuss "faculty concerns in the School of Social Work" relating to "abus[e] of power and authority, excessive micromanagement, bullying, and the creation of a hostile work environment." At a meeting attended by the complainants, Lee, and the Dean of the College of Health and

2

Social Sciences, Dr. Don Taylor, the parties discussed problems they were having with the Director of the School of Social Work, Dr. Rita Takahashi.[3] The parties also discussed, more generally, their concerns about discrimination against people of color. SFSU instructed the complainants to work out their differences with Takahashi and to meet with Taylor again if their efforts were unsuccessful.

Less than two months later, on January 5, 2010, Gupta received a fourth-year review that was critical of her performance in all three areas used to evaluate tenure—teaching effectiveness, professional achievement and growth, and contributions to campus and community. The review also criticized Gupta for several things, including purported defects in her syllabi, which turned out to be inaccurate. The review only briefly mentioned Gupta's SETE scores, all of which were significantly better than the department mean, and made no positive comments regarding her scholarship despite the fact that she had published enough articles to meet the requirements of tenure.

Shortly thereafter, Gupta sent emails to a colleague complaining that her workplace was hostile towards women of color and that Taylor and Takahashi were responsible for creating a hostile work environment. In March 2010, at a meeting held between Taylor and the School of Social Work faculty, Taylor became angry at Gupta for sending the emails and said, "I know about [the emails]" and "I'm going to get even with you." Another professor who attended the meeting testified that Taylor was "red in the face" and pointing his finger at Gupta as he called her out. When Gupta responded that she "just saw it as part of bathroom conversation," Taylor responded that there are "consequences" to "those sort of conversations." The professor testified that Taylor was "[l]oud and animated" as he made these statements and that the incident stood out because it was "not typically how I witnessed Dr. Taylor interact or behave."

---

[3]Several months before signing this letter, Gupta had grieved a letter of reprimand from Takahashi on several grounds including discrimination. The letter of reprimand was removed from Gupta's file as a result of the grievance.

During the 2010–2011 academic year—Gupta's fifth year at SFSU—Gupta was eligible to request early tenure and received support from the departmental and campus wide tenure committees and the interim director of the School of Social Work. She submitted peer teaching evaluations and references from students and faculty members at SFSU and at other institutions. Taylor recommended denial of Gupta's early tenure, stating she had not demonstrated "sustained progress" in the three areas used to evaluate tenure—teaching effectiveness, professional achievement and growth, and contributions to campus and community.

Gupta filed a complaint with the Equal Employment Opportunity Commission (EEOC) identifying Taylor by name, and filed a federal lawsuit alleging SFSU denied her early tenure as a result of discrimination and retaliation. Gupta also grieved the denial of her tenure. The matter went to arbitration and an arbitrator ordered SFSU to review Gupta for tenure the following year. Gupta voluntarily dismissed her federal lawsuit.

Gupta came up for regular tenure during the 2011–2012 academic year. Students praised her teaching, stating for example: "Gupta is one of the most knowledgeable professors in the Social Work program, and holds students to a high academic standard which I appreciate in a Masters level program . . . She holds students accountable which is not what other professors do here. Students described her teaching strengths: "She is a very organized Teacher"; "She is very helpful helping you understand a very difficult subject. I learned so much from her class."; "Overall a very excellent teacher. I wish all of my teachers would have been like her. I am so glad I took her class. This institution is very lucky to have teachers like her"; "Great knowledge of the material, enthusiasm for class, easy to reach."

The departmental tenure committee described Gupta's scholarship as "most impressive" and "reflective of a breadth of thinking, ability, and talent." She had published 12 peer-reviewed articles, twice the number required by the department's tenure policy, and had also co-authored book chapters and encyclopedia entries and

4

authored or co-authored at least 30 conference papers. She was awarded a Fulbright research award in 2012. The committee stated: "This is a remarkable level of scholarship, especially for someone who has been called upon to teach an unusually heavy load of classes. . . ." Gupta also submitted letters from current and former students, evidence of teaching in diverse areas, letters from external faculty She received universal support from her colleagues and departmental and campus wide tenure committees.

Dr. Eileen Levy, Interim Director of the School of Social Work, "enthusiastically support[ed] the recommendation of the [tenure committee] to grant tenure and promotion" to Gupta. She commended Gupta for being "a competent and dedicated teacher" who has "clearly demonstrated excellence in the area of Teaching Effectiveness," for being "a productive and prolific scholar," and for contributing to the campus and community in noteworthy ways. Levy concluded: "Dr. Gupta's contributions to the three areas of evaluation are significant, impactful and relevant, and well exceed the School's . . . criteria for tenure and promotion."

Levy testified that Taylor was unhappy with her for recommending Gupta's tenure. Taylor told Levy he was "not going to approve [Gupta] for tenure" because he "didn't like [her] attitude" and "he really didn't want people in the School of Social Work who were going to make the school look bad."

Levy recalled that Taylor previously retaliated against her (Levy) after Levy complained at an accreditation meeting that "there were issues in our School of Social Work regarding tenure and promotion of women of color and that . . . the negative decisions had impacted the students' educational effectiveness." Taylor became angry at Levy and "admonished" her for speaking out. He called Levy into his office, told him she had "betrayed" him, and said he could no longer work with her. When Levy responded that she felt they could continue working together and that she had only spoken the truth, Taylor became upset that she was "not being . . . complicit enough" and

said, " 'You know I can reduce your numbers even further?' . . . 'I can really take your numbers down' in that tone of voice." Levy testified: "And I said, 'Are you threatening me?' And I will never forget this conversation." When Levy said to Taylor, " 'You are threatening me,' " Taylor did not deny that he was, and "just stared" at Levy and "didn't say anything. He just looked at me."

Taylor once again recommended against Gupta's tenure. In criticizing Gupta's teaching effectiveness, Taylor compared one of her SETE scores to the overall "College" mean rather than comparing it to the department mean as he was required to do. And even though SETE scores can vary depending on the difficulty of the classes taught, Taylor did not take the difficulty of the classes Gupta taught in evaluating her SETE scores. Taylor also did not give much weight to Gupta's faculty classroom observation reports—all of which were highly positive—on the basis that they were written by colleagues within the department, and not by faculty in other departments, or people of higher rank. Taylor later acknowledged that tenure applicants are supposed to obtain classroom observation reports from colleagues within their own department, and that most, if not all, of the faculty members who provided Gupta's reports were in fact of higher rank.

The year after SFSU denied Gupta tenure, it granted tenure to Dr. J.H.[4], a professor in the School of Social Work who had not previously filed a complaint against SFSU. Gupta's SETE scores were better than J.H.'s SETE scores and Gupta had more than double the minimum requirements for publication, while J.H. had not met the minimum publication requirements.

Gupta grieved the denial of tenure, and SFSU reviewed additional materials and reevaluated her for tenure. After reevaluation, Taylor again recommended against tenure.

---

[4] We refer to this witness as J.H. to provide anonymity. (Cal. Rule of Court, rule 8.90(b)(10).)

The provost and the president of SFSU concurred with Taylor's recommendation. SFSU denied Gupta's tenure and terminated her employment on June 2, 2014.

On January 14, 2015, the Department of Fair Employment and Housing issued Gupta a right to sue letter. Gupta filed the instant action on February 10, 2015 alleging SFSU discriminated and retaliated against her in denying her tenure and terminating her employment. The matter went to trial and a jury found against Gupta on her discrimination cause of action, but found in her favor on her retaliation cause of action. The jury awarded Gupta $378,461 in damages, reflecting $15,600 in future non-economic damages and $362,861 in past and future economic damages.

Thereafter, Gupta filed a motion for reinstatement and promotion to full professorship. SFSU opposed the motion on various grounds, including the lack of an available position. The trial court denied reinstatement on the basis that there was no available position, but made its denial conditional on SFSU periodically reporting to the court concerning availability of positions within the School of Social Work (the Reinstatement Order).

The trial court entered judgment in favor of Gupta in the amount of $378,461 plus attorney fees and costs to be awarded at a later date. The court also stated in its judgment that it had denied Gupta's request for reinstatement and attached its Reinstatement Order to the judgment.[5] SFSU timely appealed the judgment. Thereafter, the court issued an

_____

[5]SFSU states that even though it has appealed from the entire judgment, it is not challenging the Reinstatement Order because it has since reinstated Gupta as a tenured professor and the issue of reinstatement is moot. SFSU asks this court to "dismiss [the reinstatement] part of SFSU's appeal and state that the Reinstatement Order issue is moot." Gupta responds that while SFSU is "free" to "drop[] . . . its appeal [as it relates] to reinstatement," a declaration from this court that the issue is moot is improper because reinstatement is still an ongoing issue below.

SFSU cites no authority for its position that an appellant that is not challenging a certain part of a judgment is entitled to a partial dismissal of its appeal as to that part of the judgment or a declaration that the issue addressed in that part of the judgment is moot. Moreover, " '[i]t has long been the general rule . . . that "an appeal reviews the

7

order awarding Gupta $587,160.75 in attorney fees and costs. SFSU filed a timely appeal from that order.

## DISCUSSION

### 1. Comparator Evidence

### a. Background

Before trial, SFSU filed a motion in limine to exclude evidence of two comparator professors on the ground that Gupta's qualifications were not "clearly superior" to the qualifications of those professors. The trial court granted SFSU's motion as to one comparator on the ground that the comparator was in a different department and was therefore not similarly situated to Gupta. The court denied SFSU's motion as to J.H., a professor in the School of Social Works, finding J.H. was similarly situated to Gupta in all material respects and that comparator evidence relating to J.H. was therefore relevant.

The trial court explained: "[T]his case . . . [is] about [SFSU finding] Dr. Gupta not qualified. . . . [¶] And they found [J.H.] qualified; right[?] . . . And so what the Plaintiff is saying here is, they should have found Dr. Gupta qualified, but they found her not qualified because of either retaliation or discriminatory prejudice. [¶] . . . How do you prove that? In an employment case, it necessarily involves a comparison, doesn't it? I mean, I don't see how you can get around it."

At trial, Gupta presented evidence to show SFSU retaliated against her in denying her tenure. This included Taylor's statements to Levy that he was "not going to approve [Gupta] for tenure" because of her "attitude" and because she made the school "look bad," his threatening comments to Gupta that he is "going to get even with [her]" for complaining of discrimination in her emails to a colleague, and that there are

correctness of a judgment *as of the time of its rendition,* upon a record of matters which were before the trial court for its consideration." ' " (*Hill v. San Jose Family Housing Partners, LLC* (2011) 198 Cal.App.4th 764, 770, italics added.) As noted, SFSU is not arguing that the Reinstatement Order was improper when entered. We decline to partially dismiss the appeal or make a declaration regarding mootness.

8

"consequences" for such actions. Gupta also elicited testimony from Levy to show that Taylor acted in anger and with retaliatory motives after Levy raised issues relating to discrimination against women of color. In addition, Gupta presented comparator evidence that J.H., who was similarly situated to her in all material respects but had not filed a complaint against SFSU, was treated more favorably and was granted tenure.

For example, Gupta showed Taylor held her to a different standard than J.H. Taylor said as to one of Gupta's SETE scores: "[Gupta's] score of 1.9 might be acceptable if explained, but in general this is below the norm for teaching evaluations in the College . . . ." A score of 1.9 was equal to the department mean that semester, but Taylor criticized Gupta's score, apparently by comparing it to the *College* mean, which was better than 1.9 that semester. He did so despite the fact that it is improper to compare scores across departments. He did not compare J.H.'s SETE scores to the College mean.

When Taylor evaluated J.H. for tenure, he excused her poor SETE scores by citing the difficulty of the classes she had taught, stating: "Three of the six courses in which students rated [J.H.] . . . well below the Departmental Means were in . . . undergraduate and graduate research methods classes which are often considered to be difficult classes to teach because of preconceived fears students have about research." Taylor did not do the same for Gupta's SETE scores and in fact testified at trial that he did not believe that the fact that Gupta's classes were difficult or unpopular made it more difficult for her achieve a good SETE score. Some of Gupta's worst scores were in the same classes Taylor identified as "difficult" to teach when it came to evaluating J.H..

Gupta showed her SETE scores were better than J.H.'s scores, and also presented evidence to show that, when J.H. did not meet the minimum standards for scholarship during the year she would normally have been evaluated for tenure, SFSU gave her an extra year to publish two papers to supplement her research. Taylor testified that he reminded J.H. and Levy that J.H. could "stop the clock" on her tenure evaluation by

9

taking a year at a reduced workload.  Taylor also called the editors of the journals to which J.H. had submitted her articles to urge them to make a faster decision on publication.  He made no comparable suggestion or effort for Gupta.  After being given an additional year to complete the minimum scholarship requirement of six peer-reviewed papers, J.H. was still unable to meet the requirement and yet was granted tenure.

### *b. Contention*

SFSU contends the trial court erred in allowing Gupta to present evidence of "comparator professor" J.H. without requiring her to show that her qualifications were "clearly superior" to J.H.'s qualifications.  We reject this contention.

Under the California Fair Employment and Housing Act (FEHA), it is unlawful "[f]or any employer . . . to discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden [by FEHA] or because the person has filed a complaint, testified, or assisted in any proceeding under [FEHA]." (Gov. Code, § 12940, subd. (h) [retaliation].)  Plaintiffs in FEHA cases can prove their cases by presenting either direct evidence, such as statements or admissions, or circumstantial evidence, such as comparative or statistical evidence.  (*Iwekaogwu v. City of Los Angeles* (1999) 75 Cal.App.4th 803, 816 (*Iwekaogwu*); *Soria v. Univision Radio Los Angeles, Inc.* (2016) 5 Cal.App.5th 570, 591 [direct evidence is rare and most discrimination claims must usually be proved circumstantially].)

Comparative evidence is "evidence that [the plaintiff] was treated differently from others who were similarly situated" but are outside the plaintiff's protected class. (*Iwekaogwu*, *supra*, 75 Cal.App.4th at p. 817; *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 366 (*Guz*).)  Evidence that an employer treated " 'similarly situated' " employees outside the plaintiff's protected class " 'more favorably' " is probative of the employer's discriminatory or retaliatory intent.  (*Guz*, *supra*, 24 Cal.4th at p. 366; *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792, 804 [evidence that white

10

employees who engaged in comparable conduct were retained or rehired while the plaintiff, who is black, was laid off].)

"To be probative," "comparative data . . . must be directed at showing disparate treatment between employees [who] are 'similarly situated' to the plaintiff in all relevant respects. [Citations.]" (*Iwekaogwu*, *supra*, 75 Cal.App.4th at p. 817; *Guz*, *supra*, 24 Cal.4th at p. 369.) In general, "individuals are similarly situated when they have similar jobs and display similar conduct." (*Vasquez v. County of Los Angeles* (9th Cir. 2003) 349 F.3d 634, 641; *Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 172.)

Here, the evidence amply supports the trial court's finding that J.H. and Gupta were similarly situated in all relevant respects, and SFSU does not challenge that finding. Instead, SFSU's only argument is that the court should have required Gupta to show she was "clearly superior" to J.H. before allowing her to present evidence regarding J.H.. SFSU, however, cites no relevant authority to support its position that such a showing is required. The failure to cite relevant authority is not surprising as it is well settled that for comparator evidence to be probative, and therefore admissible at trial, all that is required is for the comparator, who was treated more favorably, to be "similarly situated" to the plaintiff "in all relevant respects." (*Iwekaogwu*, *supra*, 75 Cal.App.4th at p. 817; *Guz*, *supra*, 24 Cal.4th at p. 369; Evid. Code, § 351 ["Except as otherwise provided by statute, all relevant evidence is admissible"].)

SFSU inaccurately asserts the Ninth Circuit "characterized the standard as 'clearly' superior' " in *Raad v. Fairbanks N. Star Borough Sch. Dist.* (9th Cir. 2003) 323 F.3d 1185, 1194 (*Raad*).) *Raad*, however, did not set a "clearly superior" standard or requirement for the admissibility of comparator evidence at trial. In *Raad*, the plaintiff claimed hiring discrimination in part on evidence that she was substantially more qualified than the applicant who was hired. (323 F.3d at p. 1194.) The Court of Appeals reaffirmed that evidence of superior qualifications, standing alone, is enough to prove pretext and, therefore, adequate to survive summary judgment: "In this Circuit, we have

held that a finding 'that a . . . plaintiff's qualifications were clearly superior to the qualifications of the applicant selected is a proper basis for a finding of discrimination.' " (*Ibid*.) There is nothing in *Raad* that supports SFSU's proposed rule that comparator evidence is admissible at trial only where the plaintiff can show he or she is clearly superior to the comparator.

SFSU's reliance on *Reeves v. MV Transportation, Inc.* (2010) 186 Cal.App.4th 666 (*Reeves*) is similarly misplaced. The plaintiff, a 56-year-old attorney, applied for a job that was given to a 40-year old attorney. (*Id*. at p. 673.) The Court of Appeal concluded that pretext was not shown where the plaintiff's qualifications were not "vastly" or "clearly superior" to those of the selected applicant. (*Id*. at pp. 675, 677.) " 'In cases involving a comparison of the plaintiff's qualifications and those of the successful candidate, . . . a reasonable juror . . . would not usually infer discrimination on the basis of a comparison of qualifications *alone*' " where there are only " small differences in the qualifications of the candidates." (*Id*. at p. 674, italics added.) However, " '[i]f a factfinder can conclude that a reasonable employer would have found the plaintiff to be *significantly better* qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate' " for discriminatory reasons. (*Ibid*.) The Court of Appeal concluded the plaintiff had not shown pretext because his qualifications were not "vastly" or "clearly superior" to those of the selected applicant. (*Id*. at pp. 675,677.)

In no way did the Court of Appeal in *Reeves* overturn the longstanding rule that comparator evidence is relevant and admissible where the plaintiff and the comparator are similarly situated in all relevant respects and the comparator is treated more favorably. (*Iwekaogwu*, *supra*, 75 Cal.App.4th at p. 817 [no mention of any minimum standard for admissibility of comparator evidence based on qualifications]; *Guz*, *supra*, 24 Cal.4th at p. 366 [same].) Rather, it held that in a job hiring case, and in the context of

a summary judgment motion, a plaintiff's weak comparator evidence "alone" is insufficient to show pretext.  (*Reeves*, *supra*, at pp. 674, 677.)

We note there is one statement in the *Reeves* opinion that may be misinterpreted to stand for the proposition that a plaintiff's qualifications must be clearly superior for comparator evidence to be relevant to the issue of discrimination or retaliation.  That statement provides:  "the precedents do consistently require that the disparity [in qualifications] be substantial to support an inference of discrimination.  [Citations]."  (*Id.* at p. 675.)  As noted, however, *Reeves* addressed situations in which comparator evidence is *the only evidence of pretext* a plaintiff has shown in an effort to defeat summary judgment.  (*Id.* at pp. 675, 676.)  In fact, one of the cases cited in *Reeves* in support of the statement clarifies that "slight differences in qualifications" are insufficient to overcome summary judgment " '*in the absence of any other evidence that would allow a jury to infer that discrimination took place*.' "  (*Chappell-Johnson v. Bair* (D.D.C. 2008) 574 F.Supp.2d 87, 100, quoting *Hammond v. Chao* (D.D.C. 2005) 383 F.Supp.2d 47, 57, italics added.)  In other words, where there is evidence other than comparator evidence to support an inference of pretext, the plaintiff is not required to show his or her qualifications are clearly superior in order to defeat summary judgment.  As the court in a case to which SFSU cites stated, also in the context of a motion for summary judgment: "[E]vidence regarding academic qualifications, standing alone, is insufficient to prove pretext unless the plaintiff was 'clearly superior' to his comparators.  [Citations.] However, a plaintiff need not show she was 'clearly superior' if, 'considering the evidence as a whole, there are . . . other bases upon which a trier of fact could infer pretext.' [Citation.]"  (*Hargrave v. University of Washington* (2015) 113 F.Supp.3d 1085, 1099–1100.)

Both *Reed* and *Reeves* involved a job hiring, evaluated the evidence in the summary judgment context, and discussed situations in which comparator evidence was the *only* evidence of pretext.  In contrast, the instant case was about the denial of a job

promotion, addressed the admissibility of evidence at trial after Gupta had already defeated summary judgment, and involved a situation in which Gupta presented ample evidence other than comparator evidence from which the jury could infer retaliation. The *Reed* and *Reeves* cases are therefore inapposite and do not support SFSU's contention that Gupta was required to establish her clearly superior credentials before being allowed to present comparator evidence at trial.

In sum, we conclude the trial court did not err in allowing Gupta to present evidence relating to comparator J.H. without showing her qualifications were clearly superior to J.H.'s qualifications.[6]

## 2. Jury Instructions

SFSU contends the trial court erred in refusing to give the following special jury instruction regarding comparator evidence: "A comparison between Plaintiff and another assistant professor who Plaintiff asserts was not as qualified for [the] promotion as Plaintiff, can be relevant to prove discriminatory or retaliatory motive if the comparator is similarly situated to Plaintiff in all material respects *and Plaintiff's qualifications were not just better but were clearly superior to those of the comparator*." (Italics added.) SFSU The court declined to give the special instruction and instead instructed the jury as follows: "Evidence has been introduced as to other tenure recommendations made by Dean Taylor. You may consider such recommendations as evidence if the persons about whom those decisions were made were similarly situated to Rashmi Gupta in all material[] respects."

---

[6]SFSU also argues the trial court should have held an evidentiary hearing under Evidence Code section 402 to determine whether Gupta's qualifications were clearly superior to J.H.'s qualifications. In light of our conclusion that Gupta was not required to show she was clearly superior to J.H., we also reject SFSU's argument that the court erred in declining to hold an evidentiary hearing on the issue.

In light of our conclusion that Gupta was not required to show her qualifications were clearly superior to J.H.'s qualifications, we also conclude the trial court did not err in declining to give the proposed special instruction.

### 3. Trial Court's Questioning of Witnesses

SFSU contends the trial court erred in improperly "interven[ing] in the questioning of witnesses before the jury in a manner that favored [Gupta]." We reject this contention.

Evidence Code section 775 provides: "The court, on its own motion or on the motion of any party, may call witnesses and interrogate them the same as if they had been produced by a party to the action, and the parties may object to the questions asked and the evidence adduced the same as if such witnesses were called and examined by an adverse party. . . ." As our Supreme Court stated: "Numerous courts . . . have recognized that it is not merely the right but the duty of a trial judge to see that the evidence is fully developed before the trier of fact and to assure that any ambiguities and conflicts in the evidence are resolved insofar as possible." (*People v. Carlucci* (1979) 23 Cal.3d 249, 255; see also *Conservatorship of Pamela J.* (2005) 133 Cal.App.4th 807, 827.) " '[I]t has been repeatedly held that if a judge [wishes] to be further informed on certain points mentioned in the testimony it is entirely proper for [the judge] to ask proper questions for the purpose of developing all the facts in regard to them. Considerable latitude is allowed the judge in this respect as long as a fair trial is indicated [to both parties]. Courts are established to discover where lies the truth when issues are contested, and the final responsibility to see that justice is done rests with the judge.' " (*People v. Carlucci*, *supra*, 23 Cal.3d at p. 255.)

SFSU argues the trial court improperly assisted Gupta during her testimony by asking her to elaborate on certain points that resulted in her emphasizing issues unfavorable to SFSU. SFSU asserts the court also made some statements during Gupta's testimony that had the effect of calling Taylor's credibility into question. Our review of the record, however, shows the court intervened to assist counsel in obtaining clearer

15

responses when Gupta was having difficulty answering counsel's questions. The court later explained: "[Gupta] often does not answer your [SFSU's attorney's] questions . . . I don't know what it is exactly. . . ¶ I don't think you're getting fair testimony from her if that's the case . . . . I can instruct her to try to answer the question better than she did and there were a couple of occasions when she did that." The court stated it was a "necessary procedure" for it to intervene "for a witness to truthfully answer."

SFSU also argues the trial court improperly intervened by suggesting to Gupta's attorney, "I think you should put some of these dates up on the—at least write them down." SFSU's attorney objected and the court overruled the objection, stating, "it's important for all the parties that the timing on these things is something that I think needs to be clear." Gupta's attorney proceeded to write down various dates. There is no evidence that any of the dates were in dispute or that it was prejudicial to SFSU for Gupta's attorney to write the dates so that the jury could have a timeline.

During the course of the trial, the trial court asked questions of witnesses for both parties. The court urged the parties to object if they felt any questions were inappropriate and told the jury that "[c]ounsel have a right and a duty if they think a question that I've asked is objectionable for legal reasons, to object to it." The court also instructed the jury "not to take any inference" from its questions.

SFSU has failed to show that the court's questions or comments were improper or prejudicial.

**DISPOSITION**

The judgment and the post-judgment attorney fees order are affirmed. Plaintiff Rashmi Gupta shall recover her costs on appeal.

16

_____
Petrou, J.


WE CONCUR:


_____
Siggins, P.J.


_____
Wick, J.*


*A151763/Gupta v. Trustees of the California State University*

---

    * Judge of the Superior Court of Sonoma County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

17

Trial Court:   San Francisco County Superior Court

Trial Judge:   A. James Robertson II

Counsel:       Law Offices of Elizabeth F. McDonald, Aaron S. Gorfein for Plaintiff and
               Respondent.

               Grignon Law Firm, Anne Marie Grignon; Lynch and Shupe, John Shupe
               for Defendant and Appellant.