ANCHORAGE BOARD OF ADJUST-
MENT and Anchorage School
District, Appellants,

v.

LBJ, LLC, Appellee.

No. S–13337.

Supreme Court of Alaska.

April 2, 2010.

W. Michael Stephenson, David A. Nesbett, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellant Anchorage School District.

Robert A. Royce, Moira K. Smith, Ashburn & Mason, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, WINFREE and CHRISTEN, Justices.

*OPINION*

PER CURIAM.

The Anchorage School District appeals the superior court's decision reversing the Anchorage Board of Adjustment's decision and reinstating that of the Anchorage Platting Board. We AFFIRM the superior court's decision for the reasons expressed in that decision, which we attach as an appendix.

FABE, Justice, not participating.

APPENDIX

IN THE SUPERIOR COURT FOR
THE STATE OF ALASKA

THIRD JUDICIAL DISTRICT
AT ANCHORAGE

LBJ, LLC
    Appellant,

v.

ANCHORAGE BOARD OF ADJUSTMENT
and ANCHORAGE SCHOOL DISTRICT,
    Appellees.

Case No. 3AN-06-4251 CI

Planning Dept. Nos. S-11099-3 & 4

*Decision on Appeal* *

The Municipality of Anchorage built a new high school in Eagle River near the end of Yosemite Drive, a road leading to a subdivision being developed by Appellant LBJ. The Platting Board found that this required the school district to improve the road, but the Board of Adjustment reversed based on a Traffic Impact Analysis, which concluded that no major upgrades were required. The developer argues that the latter decision was not supported by substantial evidence, and that because the road was designated an urban collector, the improvements were required by the city code.[1]

**Summary of proceedings before Platting Board and Board of Adjustment**

The Eagle Pointe Subdivision is some 93 acres, and has been under development since 1998. Partially occupied now, it will eventually have almost 300 residential units, and it is zoned R-1 SL. Access to Eagle River Loop Road and the Glenn Highway is via Yosemite Drive, which is 24 feet wide, paved, with gravel shoulders, except for the portion within the Eagle Pointe Subdivision, which was built to "urban collector standards," meaning it is 33 feet wide, with paved shoulders, curbs, gutters and streetlights. The road was built by LBJ at the beginning of its development.

In 2003, the Municipality obtained preliminary approval to subdivide and rezone a 50 acre tract on the Glenn Highway (SW) end of Yosemite Drive, for construction of a new high school, Eagle River High. The Anchorage Assembly approved the rezoning. The new designation was PLI, Public Lands and Institutions, within the urban improvement

---

* The superior court's Decision on Appeal has been edited to conform to our style and formatting requirements and most internal citations have been omitted.

1.  Anchorage Municipal Code (AMC) 21.85.030.

area in LBJ's view,[2] although ASD argues that the designation as "urban" did not take effect, if it ever did, until well after the 2003 preliminary plat was approved. The preliminary approval had not required specific improvements to Yosemite Drive, deferring instead to the recommendations of the Traffic Impact Analysis, but when the matter came back to the Platting Board in 2005, it found that upgrades were required, including sidewalks, a "critical" safety issue. The board also concluded that it was important that the school be allowed to open as scheduled. The Platting Board accordingly listed the improvements that would have to be made to the road, but gave the school district time to seek funding alternatives from the Municipality. The board noted that it was treating the application as it would for any other entity, and imposed standards equivalent to "urban collector standards," which would require upgrades similar to those in place on the most eastern portion of the road—curbs, gutters, lighting, paved shoulders and a separated multi-use path.[3]

The school district appealed to the Board of Adjustment. The BOA determined that the Platting Board's decision was not supported by substantial evidence, substituted its own judgment, and concluded that Yosemite Drive did not need to be upgraded to urban collector standards. It instead reinstated the earlier Platting Board condition requiring negotiation of a "subdivision agreement with the Private Development Section for construction of any road improvements that may be required by the final approved Traffic Impact Analysis." It also concluded that the finding that the lack of a sidewalk was a critical life safety issue was not supported by substantial evidence. It declined to address whether the Platting Board exceeded its authority in requiring specific design standards, whether the designation of an urban residential area was correct, whether the school district was a subdivider as that term is used in AMC 21.75.035, and whether the district could be required to enter into a subdivision agreement. (It found that ASD had already agreed to enter into the subdivision agreement to implement the recommendations of the Traffic Impact Analysis.) The TIA had concluded that the road could accommodate a school of 800 students without the upgrades required by the Platting Board. This appeal followed.[4]

## Standard of Review

This appeal is on the municipal record, and the findings are to be sustained if, in light of the entire record, they are supported by substantial evidence.[5] I am to view the evidence in favor of the findings, without reweighing and substituting my judgment.[6] Moreover, a presumption of validity is to be accorded zoning decisions.[7] The adequacy of findings and conclusions, however, does present a legal issue which is reviewed de novo,[8] as are other such issues not involving agency expertise,[9] or which present only a question of statutory interpretation.[10] Questions that do involve agency expertise are reviewed to determine if they have a reasonable basis.[11]

ASD disagrees with Appellant's statement that I should view the BOA decision just as the supreme court views one of the superior court sitting as an intermediate appellate court, and to the extent this standard conflicts with that stated above, the school dis-

2. See AMC 21.85.020(E).

3. See AMC 21.85.030(A).

4. AMC 21.30.180; AS 22.10.020(d); Alaska R.App. P. 601(a).

5. S. Anchorage Concerned Coal., Inc. v. Coffey, 862 P.2d 168, 173 (Alaska 1993); AS 29.40.060; AMC 21.30.180(A), 190.

6. Raad v. State Comm'n for Human Rights, 86 P.3d 899, 903 (Alaska 2004).

7. S. Anchorage Concerned Coal., 862 P.2d at 173 (citing 3 EDWARD ZIEGLER, RATHKOPH'S THE LAW OF ZONING AND PLANNING, § 42.07 at 42–65 (1992)).

8. Raad, 86 P.3d at 904; Alvarez v. Ketchikan Gateway Borough, 28 P.3d 935, 938 (Alaska 2001).

9. Holding v. Municipality of Anchorage, 63 P.3d 248, 250 (Alaska 2003).

10. Tesoro Alaska Petroleum Co. v. Kenai Pipe Line Co., 746 P.2d 896, 903–904 (Alaska 1987).

11. Id. at 903.

trict is correct; deference is afforded to the board's interpretation within its proper sphere.[12] But there may also be a question of how to interpret an ordinance that says that the findings of "the platting board ... and the board of adjustment shall not be reversed if, in light of the whole record, they are supported by substantial evidence,"[13] if the two bodies came down on opposite sides on an important factual issue. Given the deferential standard,[14] it is conceivable that *both* decisions could be supported by substantial evidence.[15] While courts try to be consistent in applying the standard of review, it is not always a completely straightforward exercise.[16]

### Statement of facts and the positions of the parties

The school district emphasizes the chronology of the proceedings below, noting the long period of time that elapsed between the preliminary commitment and the hearing at which local residents turned out at the bidding of LBJ and steamrolled the platting board into requiring improvements to Yosemite Drive. It points out that LBJ principal Jose Vincente did not originally ask for upgrades to urban collector standards, and that the preliminary plat was approved without objection. The road was not designated as a "collector" street until September of 2003, and the TIA completed in early 2004 concluded that it was adequate for the projected traffic. Mr. Vincente's appeal of this decision was rejected as untimely, apparently because condition G of the preliminary approval required submission of the traffic analysis. But when approval of the final application dragged on, Mr. Vincente was able to reopen the public hearing to address issues relating to Yosemite Drive, based on new evidence or changed circumstances. The Platting Board was informed that the

MOA was seeking state funding of a project to upgrade the road to urban collector standards, although staff recommended against requiring ASD to require this.

At the March 8, 2005 Assembly meeting, Mr. Vincente testified that ASD's construction of a new school was subject to title 21 of the municipal code, and improvements to Yosemite Drive were needed. The school district agreed that it was bound by title 21, but noted that the municipality builds roads and ASD doesn't. The major road issue discussed at this meeting and the subsequent school board meeting concerned drainage, and the Assembly deferred to the Platting Board.

By letter of March 31, 2005, LBJ noted that it was now time for the Platting Board to determine the most compatible improvement area under AMC 21.85.020(E). The letter urged that the designation be "urban," and argued, as Appellant does in this appeal, that this meant that the road would have to be upgraded by the district to the urban standards set forth in AMC 21.85.030(A), which does indeed list curbs and gutters, sidewalks, walkways and street lighting.[17] At the public hearing in April, the Platting Board heard from both sides on this issue, and approved a motion that Yosemite Drive be improved to collector status. While it was originally contemplated that this would happen before the new school opened in the fall, "calmer heads prevailed" and the requirement was delayed, as reflected by the June 1 decision of the Platting Board.

Since LBJ's position is that the urban classification means that the road upgrades are required by the ordinance, the district argues that the Platting Board never did find that the school site should be placed in an urban improvement area. It also argues that the BOA decision is supported by substantial evidence, and that if upgrades are necessary,

12. *S. Anchorage Concerned Coal.*, 862 P.2d at 173 n. 12; *Vill. of Eklutna v. Bd. of Adjustment,* 995 P.2d 641, 643 (Alaska 2000).

13. AMC 21.30.190.

14. *See Ketchikan Gateway Borough v. Ketchikan Indian Corp.*, 75 P.3d 1042, 1045 (Alaska 2003).

15. *See* AMC 21.30.095 (Board of Adjustment decisions on appeal).

16. *See generally Galt v. Stanton,* 591 P.2d 960, 966–67 (Alaska 1979) (Rabinowitz, J., concurring).

17. AMC 21.85.030(A)(3)-(6).

the Municipality is responsible for them. ASD also maintained in both its briefing and at oral argument that, for a variety of reasons, setting aside the BOA decision and reinstating the Platting Board's would be unfair. Each of these issues will be addressed in turn.

### Did the Platting Board place the new school in an urban improvement area?

LBJ starts from the premise that the Platting Board placed the school subdivision in an urban improvement area. It quotes the head of MOA's planning director that "upon adoption of the PLI zone by the Assembly, the property will be subject to urban development standards." The full quotation is set forth in the opening brief, and the Platting Board adopted a resolution a month later that said basically the same thing: Yosemite Drive was designated a collector street in 2003, and if rezoned to PLI, the effect would be to "subject the property to urban rather than rural road improvement development standards under AMC 21.85.020." A month later, the Assembly did just that, and that change was duly noted by the Platting Board in its discussion before adoption of its decision on June 1.

But ASD still contends that the board "failed to make the necessary finding that the school site should be placed in an 'urban improvement area.'" It points to the April 20, 2005 meeting in which the board did not act on a specific request for such a finding, and to the vote on an amendment to use the words "urban collector standards" in Condition 11. It also notes that much of Tract A is undeveloped and could reasonably be designated rural.

The ordinances, however, require the Platting Board to "place a subdivision within the PLI zoning district in the improvement area that it finds to be most compatible with the proposed use of the parcel and the zoning district classifications of the surrounding area."[18] The Eagle Pointe Subdivision, east of the school and parcel A in the site plan, is zoned R–1, which is by ordinance an automatically urban designation, and parcels C and D, west and northwest, are I–2 (industrial), also urban.[19] Eagle River Loop road, which intersects Yosemite and connects it with the highway, is also zoned residential. The Mental Health Trust owns parcel B, zoned PLI, which is also the case with the lands to the north and west of the area. There is a greenbelt to the northeast.

In addition to arguing that the urban designation is the most compatible with the area, LBJ notes that the district argued to the Board of Adjustment that the Platting Board took that action, and that the BOA characterized the issue raised in the appeal as whether the board "erred in determining that the Eagle River High School site should be designated urban under AMC 21.85.020." While it ultimately concluded that it did not need to resolve this issue, Appellant is correct that this is the only way to read the administrative record. The Platting Board placed the school site in an urban improvement area, and then, even while declining to directly apply the ordinance, imposed requirements equivalent to those found in AMC 21.85.030(A).

### How should the two decisions on urban collector standards be analyzed?

Neither the Platting Board nor the BOA expressly decided whether the urban designation meant that Yosemite Drive had to be upgraded to urban collector standards, with the former board mandating equivalent improvements, and the latter determining that the decision to require the upgrades was not supported by substantial evidence. The Board of Adjustment then concluded that it did not need to decide whether the Platting Board exceeded its authority in requiring the improvements. LBJ argues that not only did the Platting Board have the power to impose urban collector standards, but that both it and the BOA were required to do so by AMC 21.85.030(A).

The platting authority may only approve plats that conform to chapters 21.75 through

---

18. AMC 21.85.020(E).

19. AMC 21.85.020(A).

.85 of the municipal code,[20] and 21.85.030 provides that the subdivider "shall construct and install the improvements provided by this section for the improvement area where the subdivision is located." Subsection A of this ordinance lists those items required for the urban areas, and they are basically the same improvements required by the Platting Board. The Board finessed the question of whether the standards applied directly, worrying about precedent, and then the district argued on appeal that specific design standards proposed by the developer couldn't be imposed upon it in this way. But it is difficult to understand exactly how the standards might have been thought *not* to apply, given the understanding that ASD would be treated as any other subdivider[21] and the straightforward language of the municipal ordinances.

ASD essentially argues that such a result would not be fair—all that was originally sought was an improvement to the road's shoulders, the preliminary plat did not contain the requirements, and Yosemite Drive wasn't designated a collector street until after approval of the preliminary plat. The TIA concluded that the road was adequate. The Chugiak Birchwood Eagle River Rural Road Service Area has the authority to upgrade the road. Historically, MOA and not the district has funded such improvements. Money has been requested from the Legislature. These latter contentions will be addressed next, followed by an attempt to apply the standard of review to the conflicting decisions of the two boards that considered the issue, and then a brief discussion of fairness and procedural due process.

### Is the Municipality rather than ASD responsible for the upgrades?

The Board of Adjustment concluded that the Chugiak Birchwood Eagle River Rural Road Service Area (CBERRRSA) had the authority but not the responsibility to fund and construct improvements to Yosemite Drive. Without providing any authority to demonstrate that the board erred in this regard, ASD argues that the record is absolutely clear that the Municipality and not it has historically funded and constructed road improvements adjacent to schools, and that CBERRRSA is the responsible service area. It further notes that if MOA requested a grant from the Legislature to pay for the improvements, that using state money would trigger federal funding. It accuses LBJ and residents of the Eagle Pointe Subdivision of "clamoring for immediate improvements" to improve their own situation at public expense.

As was observed above, ASD has not argued that it should be treated differently than any other subdivider. It is therefore incumbent upon it to provide the analysis and authority for its position. While it provides the germ of an argument with its contention that it shouldn't have to provide improvements for the entire length of Yosemite Drive, it fails to develop this, or to show how the history and politics involved advance its position under the applicable ordinances. LBJ built the road to the required standard within its subdivision, and the district is essentially being held to the same standard, albeit to a longer stretch of the road and in a context that evolved over time.

Nor is the relationship between ASD and the Municipality raised in this appeal. This is a complex subject, which has a number of checks and balances,[22] and which has been addressed to some extent by Alaska law.[23] A conclusion that ASD is responsible for the upgrades in no way precludes city or even state funding of the project. But absent some answer to the seemingly universal requirements of the Code,[24] the District's argument that the CBERRRSA is directly responsible for the upgrades must fail.

20. AMC 21.75.010(A)(1).

21. AMC 21.75.035.

22. *Homeward Bound, Inc. v. Anchorage School Dist.*, 791 P.2d 610, 612 (Alaska 1990).

23. AS 14.14.060–065.

24. AMC 21.85.010.

### What does the substantial evidence test mean in this context?

As noted earlier, this court's review of factual determinations does not allow for reweighing of the evidence; a finding is to be sustained if supported by substantial evidence.[25] But AMC 21.30.190 gives this deferential standard to both boards, and they arrived at different conclusions as to whether Yosemite Drive had to be upgraded to urban collector standards. Specifically, the Board of Adjustment found that the Platting Board's decision requiring the upgrade of Yosemite Drive to urban collector standards was not supported by substantial evidence. It then substituted its judgment and reinstated the condition that only required compliance with the recommendations of the Traffic Impact Analysis.

Consistent with this conclusion, the school district argues that the TIA provided a valid basis for the BOA decision. LBJ responds to this by pointing out flaws in the analysis, and there is ample material in the record from which to support either conclusion. The BOA did not discuss the evidence in its decision, citing only to the TIA, and disagreeing with the conclusion that the increased traffic volume and safety concerns constituted substantial evidence for the decision of the Platting Board. The BOA also cited testimony that there was already a trail from the subdivision to the school, and concluded that the finding that the absence of a sidewalk posed a critical life safety issue was not supported by substantial evidence. LBJ contends that there was indeed substantial evidence that the street is too narrow and too dark for winter use by pedestrians, especially students.

But despite the briefing and argument, it still isn't apparent how the Board of Adjustment reached its decision, or that there is a genuine issue of material fact raised by this appeal. The first predicate fact to the Platting Board's decision was that Yosemite Drive was a collector road. The BOA never disagreed with this finding, which seems wholly in line with the term's definition.[26] Next, the Platting Board found that the subdivision had been rezoned PLI by the Assembly, and the BOA likewise did not disagree with this finding. When a subdivision is rezoned PLI, the Platting Board must place it within the improvement area that it finds to be most compatible with the proposed use of the subdivision and zoning of the surrounding area.[27] Having reached this point, the Platting Board was required to decide which improvement area under AMC 21.85.020 was most appropriate for the new Eagle River High School Subdivision, as was discussed earlier. ASD has simply never explained how it is that the BOA could leave this analysis essentially unchanged, and yet conclude that urban collector standards don't apply to this particular stretch of road. Accordingly, the issue posed is a legal one, and ASD has failed to supply a reasonable basis for the decision made by the Board of Adjustment. And, while the finding of the Platting Board that the improvements are justified by safety concerns might be sustained as supported by substantial evidence, it is not necessary to reach this issue, since I conclude that if Yosemite Drive is an urban collector street, the ordinance requires the improvements by operation of law.

### Was ASD denied due process or treated unfairly?

As noted earlier, the school district devoted substantial portions of its memorandum and oral argument to the chronology of the proceedings below and the reasons why reversal of the BOA decision would be unfair to it and the citizens of Anchorage. Yosemite Drive was not designated a collector street at the outset, and the preliminary plat did not require the upgrades that were later deemed necessary. ASD maintains that this didn't allow it to budget for the improvements and obtain the necessary appropriation.

One might imagine that private developers would make a similar pitch, when unanticipated environmental or other costs raise the price, and the first question would be wheth-

**25.** *See* note 5, above.

**26.** AMC 21.35.020.

**27.** AMC 21.85.020(E).

er the improvements are actually required. That will often be a factual issue, and if the developer was denied an opportunity to fully present evidence or was otherwise disadvantaged in the proceedings, a remand might be necessary to assure a fair process. But if the law is unambiguous and doesn't turn on a factual dispute, the fact that the cost may have been unforeseen will not give rise to any remedy on appeal. Nor does the district's perfunctory invocation of due process help its cause, since—even if treated as a party entitled to constitutional protection—it fails to point to a failure of notice or opportunity to be heard, but rather asks for a result that appears to be contrary to what is required by the Municipal Code. By definition, the process contemplates that changes might be made to a preliminary plat. While the district may feel snookered by the unique chronology and late-breaking politics, the result should have been predictable as far back as September of 2003, when the transportation plan was amended to designate Yosemite Drive a collector, and I find no unfairness to the district.

## Conclusion

The district has agreed from the outset that it was subject to title 21 of the Municipal Code. While it is true that significant effort in the administrative proceedings was devoted to issues of traffic and safety, and that the Platting Board did not directly rule that Yosemite Drive was an urban collector, it does appear that there is no other way to read the record. Accordingly, the issue presented in this appeal is more narrow—must a subdivider upgrade a road to the standards set forth in AMC 21.85.030(A) when, prior to approval of a final plat, the road is found to be a collector road in an urban improvement area? I conclude that the answer is yes. While a traffic study might be used to require improvements to a road not designated an urban collector, it cannot be used to dispense with those required by the Code, at least not without going through the variance procedure. Accordingly, the decision of the Board of Adjustment is reversed and that of the Platting Board reinstated.

Dated: October 15, 2008

/s/ Fred Torrisi
Superior Court Judge